Case 0:19-cv-61856-RAR   Document 1   Entered on FLSD Docket 07/23/2019   Page 1 of 16

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SABRINA ANNISSA RICHARDS,

    Plaintiff,

vs.

CITY OF CORAL SPRINGS, FLORIDA, and
DANIEL POWERS, individually,

    Defendants.

_____/

## COMPLAINT

This is what "walking while black" looks like in Coral Springs, Florida—a city that is 17.9% "Black or African-American" and 69.2% "White or Caucasian," according to the latest census numbers[1]." This is what racial profiling looks like. 17.9% of the population comprised 54% of all pedestrian violations handed out in Coral Springs between 2016 and 2018. The graph to left below depicts the percentages of the total population of Coral Springs and the graph to the right depicts the percentages of citations for all pedestrian violations handed out in Coral Springs.

 

The laws governing pedestrians in Florida are set forth in Fla. Stat. § 316.130, which is

---

[1] https://en.wikipedia.org/wiki/Coral_Springs,_Florida#Demographics.

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

divided into multiple subparts. The above graph is for all pedestrian violations. However, for certain subsections, the numbers are even more shocking. For example, Fla. Stat. § 316.130(1) states that a pedestrian must obey all official traffic control devices and was the most heavily cited subsection between September 12, 2016, and December 10, 2018, according to responses to public records requests. During that period, in a city of 122,000, with less than 18% of its population black, 75 white individuals and 80 black individuals—nearly 50% of all the citations—received citations for violating § 316.130(1).

The sections dealing with jaywalking are even more lopsided. Out of a total of 190 citations for jaywalking, African Americans received 112 citations and whites received only 69[2]. In other words, although comprising only 17.9% of the population of Coral Springs, African Americans received 58.95% of all citations for jaywalking. Shockingly, in Coral Springs, blacks are more than three times as likely as whites to be ticketed for a pedestrian violation.

Finally, a failure to use a sidewalk is a potential violation of § 316.130(3). Yet, during that same period, every single citation for § 316.130(3) was given to an African American. Not a single white person was cited with violating § 316.130(3).

Enter Plaintiff, Sabrina Annissa Richards ("Sabrina") who had just finished a long week working two jobs and was looking forward to visiting her mom in Coral Springs. At about 6:00 p.m. on March 11, 2016, then 22-year old Sabrina got off the bus on University Drive. As the nearest crosswalk was approximately a quarter of a mile away, Sabrina looked both ways, made sure no traffic was coming and crossed the street, just like so many white people do every day.

As Sabrina began walking along University Drive towards her mom's house, City of Coral Springs Police Officer Daniel Powers suddenly stepped out in front of her. Officer Powers just

---

[2] The remaining nine citations were marked as "unknown" or "other."

happened to have been in the parking lot of one of the many strip malls along University Drive as Sabrina crossed the street. Sabrina had not seen Officer Powers and was quite shaken when he approached her and told her to stop. Officer Powers then asked Sabrina for her identification. Sabrina, flustered, concerned, and apprehensive, asked Officer Powers why he was asking her for identification. Officer Powers—not liking his authority challenged—did not respond and instead instructed Sabrina to step towards him, which she did.

As she approached, Officer Powers grabbed Sabrina's arm, twisted it behind her and shoved her to the ground. After handcuffing Sabrina, searching her bag without consent, and not reading Sabrina her rights—Officer Powers put Sabrina in his patrol car and drove her to jail—charging her with violating § 316.130(8)[3] and for resisting arrest without violence. Sadly, Sabrina did not make it to her mom's house. Instead, Sabrina spent the night in Broward County jail.

Unlike so many in her position—Sabrina was determined to fight the injustice she was forced to endure and filed a "Motion to Suppress: Illegal Warrantless Stop" in her criminal case. On April 19, 2018, an evidentiary hearing was held before the Honorable Ginger Lerner-Wren and Officer Powers took the stand and testified about what happened that evening along University Drive. In her Order, Judge Lerner-Wren found "the stop and seizure of the defendant by Officer Powers to be unlawful, and the subsequent arrest for Resisting Without Violence to be unlawful and in violation of the Fourth Amendment of the U S Constitution [sic]." In a most extraordinary move, Judge Lerner-Wren took the time to point out that she "found the credibility of the State's witness, Coral Springs Police Officer, Powers [sic] to be at issue." A certified copy of Judge Lerner-Wren's order is attached as Exhibit "A."

---

[3] "No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

3 | P a g e
**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

And so, Sabrina Annissa Richards sues City of Coral Springs, Florida (the "City") and Daniel Powers ("Officer Powers") and alleges as follows:

**INTRODUCTION**

1. In a powerful and moving dissent, Justice Sonia Sotomayor lamented that "[f]or generations, black and brown parents have given their children 'the talk'—instructing them never to run down the street; always keep your hands where they can be seen; do not even think of talking back to a stranger—all out of fear of how an officer with a gun will react to them." *Utah v. Strieff*, 136 S. Ct. 2056, 2070 (2016) (Sotomayor, J., dissenting). "Until their voices matter too, our justice system will continue to be anything but." *Id.* at 271.

2. Sabrina's story is but a small chapter in a tale of a nationwide epidemic approaching critical mass. This incident also serves as a commentary on the vital need for body-worn cameras—both to deter police misconduct and to preserve the truth. This lawsuit explores many issues facing our society that need addressing: implicit racial bias; police violence; lack of accountability; lying on reports; rubberstamping behavior; and the devasting effect on the victims of this behavior.

3. It is only now—through the proliferation of many video recordings that have finally brought the truth to light and which have allowed the black man or woman to be believed, that an honest and painful dialogue may be had. This is not an attack on the police. To the contrary—this is an attempt to hold the few bad apples accountable for their actions, so that the vast majority of good officers can be safe and rebuild the eroded trust with the communities they are tasked with protecting and serving.

4. This is a civil rights action on behalf of Sabrina whose rights under the Fourth Amendment to the United States Constitution were violated when she was abused and mistreated

4 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

by the City and Officer Powers. The City engaged in, and continues to engage in, a pattern and practice of racial profiling and racial discrimination. Officer Powers used excessive force against Sabrina, and falsely arrested and imprisoned her.

5. Sabrina seeks redress for the violations of her rights, privileges, and immunities as guaranteed her by the Fourth Amendment to the United States Constitution, 42 U.S.C § 1983, and the laws of the State of Florida.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court arises under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1343(a)(4). Supplemental jurisdiction over Plaintiff's additional state law claims is proper pursuant to 28 U.S.C. §1367(a) because they form part of the same case or controversy.

7. Venue is properly brought in the Southern District of Florida under 28 U.S.C. 1391(b) because it is the district in which all parties reside, and in which all of the events establishing the Plaintiff's claims occurred.

8. All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution.

## PARTIES

9. Sabrina is 25 years old, a resident of Margate, Florida, of African American descent, and *sui juris*.

10. Defendant, City of Coral Springs, Florida, is a political subdivision of the State of Florida, organized and existing under the laws of the State of Florida. The City established and maintains the Coral Springs Police Department ("CSPD"), as a constituent department or agency which is responsible for maintain law and order in Coral Springs.

11. CSPD is responsible, through its officers, employees, servants, and agents, for

enforcing the regulations of the City and for ensuring that its officers, employees, servants, and agents obey the laws of the State of Florida and the United States. The City assumes the risk incidental to the maintenance of a police force and the employment of law enforcement and police officers.

12. The City has a long-standing pattern and practice and/or custom and policy of racial profiling against those of African American Descent.

13. Officer Powers is a natural person, a citizen of the State of Florida, believed to be residing in Broward County, Florida, over eighteen (18) years of age, and otherwise *sui juris.*

14. At all times material, Officer Powers was and/or is employed as a police officer of the CSPD. At all times material hereto, Officer Powers was an employee and a sworn law enforcement officer of CSPD and is being sued in his individual capacity. At all times material hereto, Officer Powers was acting as an agent and employee of The City and was acting under the color of state law.

15. As set forth in more detail below, Officer Powers, while acting within the course and scope of his employment with the CSPD and under color of law, directly violated the constitutional rights of Sabrina as well as statutory and common law duties owed to Sabrina.

## GENERAL ALLEGATIONS

16. Sabrina provides in her allegations below, the substance of certain factual allegations. Sabrina does not intend that allegations provide, in exact detail, or necessarily in chronological order, any or all allegations. Rather, Sabrina intend that this section merely provide The City and Officer Powers fair notice of the general nature and substance of her allegations.

**Implicit Racial Bias in Law Enforcement**

17. Justice Sotomayor noted that "it is no secret that people of color are

6 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

7 | P a g e

disproportionate victims" of "the humiliations of … unconstitutional searches" and that these "unlawful 'stops' have severe consequences much greater than the inconvenience suggested by the name." *Strieff*, 136 S. Ct. 2056, 2069-70.

18. Research suggests that racial bias directs police attention to Blacks regardless of whether these individuals are engaged in suspicious behavior.[4] Once an officer zooms in on a target, automatic associations of black people as aggressive, violent, or suspicious are activated.[5] These negative stereotypes may cause an officer to behave aggressively without realizing it.[6] Further, as Professor Richardson notes in her article on the role of implicit bias in the criminal justice system, the more interactions police officers have with black people, the greater the likelihood that such encounters will trigger racial stereotypes and precipitate violence.[7] Given the pervasive negative stereotypes, it should come as no surprise that American police officers stop, arrest and kill a disproportionate number of Black people.

19. Blacks are primary targets for police stops and seizures. Between 2005 and 2008, the Center of Constitutional Rights reported that approximately 80 percent of total stops by New York officers were of black and Latinos, who comprise 25 percent and 28 percent of the city's total population, respectively.[8] During this same period, only approximately 10% of stops were of whites, who comprise 44 percent of the city's population.[9] The disproportionate contact between police and blacks was not isolated to New York. According to a report by the Missouri Attorney

---

[4] L. Song Richardson, Arrest Efficiency and the Fourth Amendment, 95 Minn. L. Rev. 2035, 2064 (2011).
[5] *Id., at* 2052–53.
[6] Id.
[7] Id.
[8] Center for Constitutional Rights. "Racial Disparity in NYPD Stop and Frisks," Executive Summary, Last modified Jan. 11, 2010, http://ccrjustice.org/sites/default/diles/assets/Report-CCR-NYPD-Stop-and-Frisk_3.pdf
[9] Id.

General, black residents in Ferguson have also had significant contact with the police.[10] In 2013, 90 percent of searches conducted by police officers in Ferguson, were of African Americans, while 8 percent were of whites.[11] Blacks are also primary targets for police violence.

**Walking While Black**

20.     Turning to pedestrian tickets, the numbers tell the tale. Numerous articles and studies have been published on this very topic. One of the more thorough articles was published by ProPublica and studied the pedestrian tickets issued in Jacksonville, Florida[12]. The authors studied 5 years of pedestrian tickets and concluded that "blacks received 55 percent of all pedestrian tickets in Jacksonville, while only accounting for 29 percent of the population." In Coral Springs, with the percentage of tickets issued to blacks is almost exactly the same (54%)—the percentage blacks make up of the population is substantially less (17.9%).

21.     Similarly, Sacramento's black residents are five times more likely to receive a jaywalking citation than their non-black neighbors[13]. Seattle police handed out 28 percent of jaywalking citations from 2010 to 2016 to black pedestrians, who only make up 7 percent of the city's population[14]. From 2007 to 2011 in Urbana, Ill., 91 percent of those ticketed for jaywalking were black, in an area where just 16 percent of residents are African-American[15].

22.     Michael Brown, who was infamously shot in Ferguson, Missouri, was initially stopped for jaywalking. A subsequent Justice Department report into Ferguson's police practices

---

[10] *See* Mo. Att'y Gen., Racial Profiling Data (2013), http://ago.mo.gov/vehicle-stopsreport?lea=161 [https://perma.cc/A7PY-6H8N].
[11] Id.
[12] https://features.propublica.org/walking-while-black/jacksonville-pedestrian-violations-racial-profiling/.
[13] https://newrepublic.com/article/147396/case-jaywalking-laws.
[14] Id.
[15] https://www.nytimes.com/2017/07/03/opinion/jaywalking-while-black-jacksonville-florida.html.

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

9 | P a g e

found systemic abuses against the local black community. Federal investigators discovered that Ferguson police issued 95 percent of jaywalking citations to black residents, who only make up two-thirds of the community[16].

## SABRINA'S ALLEGATIONS

23.     Sabrina did not violate § 316.130(8) and she did not resist Officer Powers by any means. She simply asked Officer Powers why he was stopping her and why he was asking for her identification.

24.     Officer Powers did not have probable cause to stop and search Sabrina and certainly did not have cause to shove her to the ground and arrest her.

25.     As Judge Lerner-Wren already found, Officer Powers violated Sabrina's Fourth Amendment rights.

## COUNT I
### Fourth Amendment-42 U.S.C. §1983
### Sabrina against City of Coral Springs, Florida

26.     Sabrina incorporates paragraphs 1-25 as though fully set forth herein.

27.     This is an action brought against the City pursuant to the United States Constitution Amendments IV and XIV in violation of 42 U.S.C. § 1983.

28.     Prior to March 11, 2016, the City developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the community, which caused the violation of Sabrina's constitutional rights.

29.     The City maintained a policy and/or custom of racially profiling African Americans evidenced by grossly disproportionate pedestrian tickets issued to African Americans. These acts of misconduct were tolerated and not reprimanded by the City. Thus, the City inadequately

---

[16] https://www.washingtonpost.com/news/wonk/wp/2015/03/04/95-percent-of-people-arrested-for-jaywalking-in-ferguson-were-black/?utm_term=.f7ac78ba2e4a

9 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

discouraged constitutional violations perpetrated by its law enforcement officers and ratified improper conduct and racial profiling.

30. This policy and practice of unconstitutional stops by CSPD officers utilizes race, not reasonable suspicion or probable cause, as the determinative factors in conducting a stop and/or arrest in violation of the Fourth Amendment. The victims of such racial profiling are African American, members of a protected class.

31. The City has a history of racial profiling; therefore, exhibiting deliberate indifference to the constitutional rights of persons in the community, specifically, Sabrina whose constitutional rights were violated pursuant to the United States Constitution.

32. The above pedestrian violation statistics denote a deliberate indifference on the part of the City's policy makers and custom enforcers to uphold the constitutional rights of citizens of the City, including Sabrina, in particular, citizens' right to be free from racial profiling and selective enforcement. Thus, the actions of Officer Powers may be directly imputed to The City by virtue of its established pattern and practice as set forth above.

33. As a direct and proximate result of the City's actions and inactions, Sabrina has suffered pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

**WHEREFORE**, Plaintiff, Sabrina Annissa Richards, seeks entry of final judgment against Defendant City of Coral Springs, Florida for compensatory and punitive damages, as well as costs, attorney fees, and such other relief that the Court deems just and proper.

## COUNT II
### Fourth Amendment-42 U.S.C. §1983
**Sabrina against Defendant, Officer Powers**

34. Sabrina incorporates paragraphs 1-25 as though fully set forth herein.

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

35. At all times material, Sabrina had a constitutionally protected right to be free from unreasonable searches and seizures or from being subjected to a seizure or arrest without probable cause and maintained the right to be free from unlawful assault, protected rights under the Fourth and Fourteenth Amendments of the United States Constitution.

36. On March 11, 2016, Officer Powers unlawfully detained and deprived Sabrina of her liberty, against his will and without legal authority to do so.

37. At no time did Officer Powers have any reasonable or articulable suspicion or probable cause which would support a constitutional seizure or arrest of Sabrina.

38. On March 11, 2016, notwithstanding having no reasonable or articulable suspicion, and without probable cause, Officer Powers caused Sabrina to be detained, arrested and searched, all in violation of clearly established law.

39. At all times material, any reasonably competent officer having a reasonable degree of training and expertise should have known that there was no constitutional or legally justifiable basis to arrest Sabrina.

40. At all material times, it was a clearly established violation of Sabrina's constitutional right to be free from unreasonable searches and seizures to be subjected to a search and arrest, when no reasonable or articulable suspicion or probable cause of any criminal activity existed to seize or arrest Sabrina.

41. At all times material, Officer Powers, in arresting Sabrina concealed, suppressed, omitted, and mischaracterized material facts, information, statements, or otherwise evidence, of which Officer Powers had knowledge, in violation of Sabrina's rights of due process.

42. At all times material, Officer Powers knowingly, or with reckless disregard for the truth, prepared, caused to be prepared, or participated in the preparation of an intentionally false

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

and misleading report to support his unconstitutional arrest and search of Sabrina.

43. At all material times, any reasonably competent law enforcement officer with adequate training should have known that the actions being taken in regard to the arrest and search of Sabrina were improper, unconstitutional, and likely to result in the violation of the constitutional rights of Sabrina.

44. On March 11, 2016, Officer Powers, while acting under the color of law, intended to cause, and did cause, offensive contact and unconsented touching of the body of Sabrina, including, but not limited to, throwing her down to the ground.

45. At all material times, it would have been readily apparent to a reasonably competent and trained police officer, having due regard for Sabrina's constitutional rights, that the use of physical force employed against Sabrina, without Sabrina offering any physical threat or resistance, was unjustified and was in violation of clearly established law and Sabrina's constitutional rights.

46. The actions of Officer Powers violated Sabrina's clearly established Fourth Amendment rights, and a reasonable police officer would have understood that what Officer Powers did violated those rights.

47. As a direct and proximate result of the false imprisonment, assault, and battery, Sabrina has suffered bodily injury, pain and suffering, mental anguish, loss of capacity for enjoyment of life, lost wages, and loss of ability to earn money. These injuries and losses are permanent and continuing, and Sabrina will suffer such losses in the future.

**WHEREFORE**, Plaintiff Sabrina Annissa Richards, seeks entry of final judgment against Defendant Daniel Powers for compensatory and punitive damages, as well as costs, attorney fees, and such other relief that the Court deems just and proper.

12 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

### COUNT III
### *False Imprisonment*
### Sabrina against Officer Powers

48. Sabrina incorporates paragraphs 1-25 as though fully set forth herein.

49. This is an action, under the common law of the State of Florida, for false arrest. Such claims arise from a common nucleus of operative facts as the violations of 42 U.S.C. § 1983, as set forth above.

50. On or about March 11, 2016, Officer Powers, acting in the course and scope of his employment as a police officer for The City, caused Sabrina to be arrested, detained, and deprived Sabrina of her liberty, against his will and without legal authority to do so, despite her desires to leave.

51. The actions of Officer Powers, which caused Sabrina to be arrested and held in jail overnight, were taken in bad faith and with malicious purpose and Officer Powers exhibited wanton and willful disregard of Sabrina's rights and safety. Officer Powers' actions were unwarranted under the circumstances, and were against Sabrina's will, and without legal authority.

52. At no time did Officer Powers have any reasonable or articulable suspicion or probable cause which would support a constitutional seizure or arrest of Sabrina.

53. As a direct and proximate result of the false imprisonment, Sabrina has suffered bodily injury, pain and suffering, mental anguish, loss of capacity for enjoyment of life, lost wages, and loss of ability to earn money. These injuries and losses are permanent and continuing, and Sabrina will suffer such losses in the future.

54. Sabrina has complied with all conditions precedent pursuant to Fla. Stat. 768.28 prior to filing this action.

**WHEREFORE**, Plaintiff SABRINA ANNISSA RICHARDS, seeks entry of final

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

judgment against Defendant DANIEL POWERS for compensatory and punitive damages, as well as costs, attorney fees, and such other relief that the Court deems just and proper.

### COUNT IV
### *Assault and Battery*
### *Sabrina against Officer Powers*

55. Sabrina incorporates paragraphs 1-25 as though fully set forth herein.

56. This is an action, under the common law of the State of Florida, for battery. Such claims arise from a common nucleus of operative facts as the violations of 42 U.S.C. § 1983, as set forth above.

57. The conduct of Officer Powers, on March 11, 2016, in illegally arresting Sabrina, and employing excessive force to do so, was intentional and intended to cause a harmful or offensive contact with the person of Sabrina.

58. The conduct of Officer Powers was committed in bad faith and with malicious purpose and Officer Powers exhibited wanton and willful disregard of Sabrina's rights and safety.

59. As a direct and proximate result of the battery alleged above, Sabrina suffered bodily injury and resulted in pain and suffering, mental anguish, loss of capacity of enjoyment of life, lost wages and loss of ability to earn money. These injuries and losses are permanent and continuing, and Sabrina will suffer such losses in the future.

**WHEREFORE**, Plaintiff Sabrina Annissa Richards, seeks entry of final judgment against Defendant Daniel Powers for compensatory and punitive damages, as well as costs, attorney fees, and such other relief that the Court deems just and proper.

### COUNT V
### *Vicarious Liability- State Law Torts*
### **Sabrina against City of Coral Springs, Florida**

60. Sabrina incorporates paragraphs 1-25 as though fully set forth herein

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

61. This is an action brought against the County pursuant to Fla. Stat. 768.28.

62. This count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996)[17].

63. On or about March 11, 2016, Officer Powers, acting in the course and scope of his employment as a police officer for the City caused Sabrina to be falsely detained, subject to assault and battery, searched, and arrested and transported to jail.

64. Officer Powers deprived Sabrina of her liberty, against her will and without legal authority to do so, despite her desires to leave. Officer Powers' actions of causing Sabrina to be detained, assaulted, battered, and searched were against Sabrina's will, and without legal authority.

65. The City is responsible for Officer Powers' actions in that the battery, assault, and false imprisonment were committed within the course and scope of Officer Powers' employment with the City, such that the doctrine of respondeat superior applies to this action.

66. As a direct and proximate result of the above torts, Sabrina has suffered bodily injury, pain and suffering, mental anguish, and loss of capacity for enjoyment of life. These injuries and losses are permanent and continuing, and Sabrina will suffer such losses in the future.

67. Sabrina has complied with all conditions precedent pursuant to Fla. Stat. 768.28 prior to filing this action.

68. Sabrina has ongoing and continuous permanent damages and injuries and as such is entitled to recovery. As a direct and proximate result of the unlawful actions taken by Officer Powers on behalf of the City, Sabrina has suffered pain and suffering, mental anguish, emotional

---

[17] "As a preliminary matter, the Court notes that Federal Rule of Civil Procedure 8(e)(2) authorizes pleading in the alternative, and that claims against a governmental entity and its employee "tend to be mutually exclusive in light of the law of sovereign immunity."" *Vega v. Enamorado,* 2007 WL 9702731, at *4 (S.D. Fla. 2007)(Ungaro, J.) (citations omitted).

15 | P a g e
**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

distress, and loss of capacity for the enjoyment of life.

**WHEREFORE**, Plaintiff, Sabrina Annissa Richards, seeks entry of final judgment against Defendant City of Coral Springs, Florida for compensatory damages, costs, and such other relief that the Court deems just and proper

### DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury of all issues so triable.

Respectfully Submitted,

/s/ Yechezkel Rodal
Yechezkel Rodal, Esq.
Florida Bar No. 91210
E-mail: chezky@rodallaw.com
Kristen D. Montgomery, Esq.
Florida Bar No. 1003495
E-mail: kristen@Rodallaw.com
RODAL LAW, P.A.
5300 N.W. 33rd Ave., Suite 219
Fort Lauderdale, Florida 33309
Phone: (954) 367-5308
Fax:    (954) 900-1208

*Counsel for Plaintiffs*

16 | P a g e
**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com